FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 04, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSE ROBLES-RINCON, <br><br> Defendant. | No.   2:20-cr-00155-SMJ-1 <br><br> **ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS** |

Before the Court is Defendant's Second Motion to Dismiss, ECF No. 40. Defendant is charged with being in alien in the United States after deportation and now challenges his predicate prior removal. On September 30, 2021, the Court heard oral argument on the motion and took it under advisement. Having reviewed the relevant record, the Court is fully informed and denies the motion.

### BACKGROUND

On November 3, 2020, Defendant was indicted on one count of being an alien in the United States after removal, in violation of 8 U.S.C. § 1326. ECF No. 4. This charge is based on Defendant's prior removal from the United States in February of 2013. *See* ECF No. 40-6. The Court has previously set forth the relevant facts in this matter in its Order Denying Defendant's First Motion to Dismiss, ECF

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 1

No. 61, and incorporates those facts herein. Because Defendant's motion exclusively focuses on his first removal, the Court elaborates on those facts here.

**A.    Defendant's First Removal**

In December 2012, immigration officials encountered Defendant in local custody on a driving under the influence charge and initiated formal removal proceedings against him. ECF No. 40-3 at 2. Defendant appeared before an immigration judge ("IJ") on February 12, 2013 for a group removal proceeding. ECF No. 40-7. In the Notice to Appear ("NTA") provided to Defendant prior to the hearing, Defendant was advised of his right to be represented by counsel and provided with a list of qualified attorneys providing legal services at no cost. ECF No. 40-4 at 2. The NTA further advised Defendant of his right to present evidence, to examine the Government's evidence, and to cross examine any witnesses against him. *Id.*

At the group hearing, the IJ first spoke collectively to all seven the noncitizen respondents and advised them that the hearing was to determine whether they were removable from the United States. ECF No. 40-7. The IJ explained the charges and the respondents' right to be represented by counsel and present their own evidence—including their own testimony. *Id.* She also explained that the respondents had a right to appeal her decision to a higher court. *Id.* The IJ then

discussed the two types of voluntary departure that may be available as an alternative to removal. *Id.*

After explaining the proceeding process, the IJ addressed the respondents individually in succession. *Id.* Defendant was the last of seven cases and heard the proceeding of each of the six respondents before him. *Id.* Prior to Defendant's individual hearing, four other cases were continued to obtain counsel or to provide the respondent with an opportunity to apply for alternative relief. *Id.*

Defendant's individual hearing lasted approximately four minutes. *Id.* Defendant did not request an attorney, did not request a continuance, admitted to the allegations in the Notice to Appear, and did not claim any fear of returning to Mexico. *Id.* After Defendant admitted to the allegations in the NTA—i.e., that he was a citizen of Mexico and entered the United States without permission—the IJ assessed details relevant to Defendant's case. *Id.* She verified he had no spouse, parent, or child who was a United States citizen or lawful permanent resident, that he had no medical ailments, and that no citizenship petitions had been filed on his behalf. *Id.* The IJ also assessed Defendant's criminal history, including his prior voluntary return to Mexico just two years prior. *Id.*

When asked whether he wanted to say or offer anything else, Defendant inquired about his eligibility for voluntary departure. *Id.* The IJ summarily denied the request, stating:

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 3

> Sir, I have reviewed your request. While I find you are statutorily eligible, I will deny the request as a matter of discretion given your recent conviction for driving under the influence and your prior voluntary return or immigration record.

*Id.* After finding that Defendant did not qualify for other relief, the IJ ordered Defendant's removal to Mexico. *Id.* When asked whether Defendant wanted to appeal her decision, Defendant responded "no." *Id.*

The written removal order notes that Defendant (1) applied for voluntary departure, but the application was denied and (2) was ordered removed to Mexico. ECF No. 40-6. The order also notes that he waived his appeal. *Id*. Defendant was removed to Mexico about a week later. ECF No. 40 at 8.

## LEGAL STANDARD

A valid prior order of removal is a predicate to a violation of 8 U.S.C. § 1326. *United States v. Lopez*, 762 F.3d 852, 858 (9th Cir. 2014). Thus, a defendant charged with illegal reentry can defend against the charge by attacking the validity of the prior removal. *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (quoting *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004)). To successfully challenge the validity of an underlying removal order, a defendant must demonstrate: (1) that he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the removal proceedings at which the order was issued improperly deprived the noncitizen of the opportunity for judicial review; and (3) the entry of the order was fundamentally

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 4

unfair. 8 U.S.C. § 1326(d). To show fundamental unfairness, the defendant must show that his "due process rights were violated by defects in his underlying [removal] proceeding," and that "he suffered prejudice as a result of those defects." *United States v. Melendez-Castro*, 671 F.3d 950, 953 (9th Cir. 2012) (internal quotation marks omitted).

## DISCUSSION

Defendant argues that his February 12, 2013 removal order is void because the immigration court violated his due process rights. *See generally* ECF No. 40. Specifically, Defendant assigns due process violations to: (1) the IJ's failure to give Defendant a meaningful opportunity to apply for voluntary departure and (2) the IJ's failure to advise Defendant of his eligibility to withdraw his application for admission as an alternative to removal. *Id.* at 1. Defendant claims he was prejudiced by both asserted due process violations. *Id.* at 13. The Court addresses each argument in turn.

**A.     Due Process Framework**

"Due process always requires, at a minimum, notice and an opportunity to respond." *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014) (abrogated on other grounds by *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020). In immigration proceedings, the Due Process Clause requires that the noncitizen respondent "be made aware that he has a right to seek relief." *Melendez-Castro*, 671

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 5

F.3d at 954 (internal quotation marks omitted). Specifically, if the "record contains an inference that the petitioner is eligible for relief from [removal], the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (internal quotation marks omitted).

**B.  The IJ denied Defendant due process by failing to allow him a meaningful opportunity to apply for voluntary departure, but Defendant cannot show resulting prejudice**

   **1.  The IJ violated Defendant's due process rights by summarily denying him relief after he merely inquired about his eligibility for voluntary departure**

Defendant does not dispute that the IJ at least advised him of his facial eligibility for voluntary departure; rather, Defendant contends that the IJ failed to give him a meaningful opportunity to apply for voluntary departure and develop the issue. ECF No. 40 at 9. The Court agrees.

Voluntary departure is a discretionary alternative to removal. *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1168 (9th Cir. 2003). If a removable noncitizen is granted voluntary departure, the noncitizen has a defined time period to voluntarily leave the United States rather than be removed. *Id.* As relevant here, pre-conclusion voluntary departure allows a noncitizen, who is not engaged in terrorist activity and has not been convicted of an aggravated felony, to depart the United States at his or

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 6

her own expense either instead of or before the completion of removal proceedings. 8 U.S.C. § 1229c(a)(1).

Facially eligible noncitizens in a removal proceeding must be advised of their right to apply for voluntary departure. *Melendez-Castro*, 671 F.3d at 954. But merely advising the noncitizen is not sufficient due process. Rather, the IJ must give the noncitizen "a genuine opportunity… to present evidence of the factors favoring this relief." *Id.* In considering a request for voluntary departure, the IJ must "properly weigh both favorable and unfavorable factors" bearing on whether to grant such relief. *United States v. Frias-Flores*, 425 F. App'x 640, 642 (9th Cir. 2011).

Summarily denying relief upon a respondent's inquiry about his eligibility does not comport with due process. In *Melendez-Castro*, the Ninth Circuit held that the IJ failed to give the noncitizen respondent a genuine opportunity to apply for voluntary departure, finding:

> Although the IJ at first told Melendez–Castro that he was eligible for voluntary departure, almost in the same breath the IJ told him that he would not get the relief if he applied for it because he had a criminal record. A reasonable person in Melendez–Castro's position would have been discouraged from applying for voluntary departure to an extent that it is as if he was told that he did not qualify for this relief.

*Id.*

That is precisely what happened here. Near the end of Defendant's four-minute hearing, Defendant inquired whether he was eligible for voluntary

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 7

departure. ECF No. 40-7. The IJ responded that he was statutorily eligible, but "almost in the same breath" denied relief as a matter of discretion based on Defendant's recent DUI conviction and prior immigration record. *Id.* At no point did the IJ allow Defendant to present evidence in support of relief or otherwise give him an opportunity to present his case. Although the decision to grant voluntary departure is discretionary, the IJ's rote denial lacks any meaningful assessment of factors favoring relief. As in *Melendez-Castro*, it is no wonder that Defendant never formally applied for voluntary departure. Accordingly, the Court finds that the IJ violated Defendant's due process rights when the IJ summarily denied relief upon Defendant's mere inquiry into his eligibility.

**2.  Defendant did not suffer prejudice because he has not met his burden to show that he was a plausible candidate for voluntary departure**

Even if a defendant can show he was denied due process, he still bears the burden to show that he suffered prejudice as a result of the deprivation. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004). Showing prejudice in this context does not require that the noncitizen "show he actually would have been granted relief," but rather "that he had a plausible ground for relief from [removal]." *Id.* (internal quotation marks omitted). Defendant cannot meet this burden.

To establish prejudice for a denial of voluntary departure, the defendant must make a plausible showing "that the IJ would have exercised [] discretion in the

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 8

alien's favor." *United States v. Gonzalez-Flores*, 804 F.3d 920, 927 (9th Cir. 2015). A showing that it is conceivable or possible that the IJ would find in the noncitizen's favor is plainly insufficient. *Id.* To assess whether relief was plausible, courts balance the defendant's positive and negative equities. *Id.*

Defendant has merely shown that it is conceivable that the IJ would have granted him voluntary departure. First, the Defendant's positive equities are minimal: he lived in the United States for approximately two years and has two sisters who are United States citizens. In contrast, Defendant's negative equities are significant: he was convicted of driving under the influence and illegally returned to the United States after a prior voluntary departure in 2010. Defendant stresses that the IJ never asked whether he had other family members living in the United States. If she had, Defendant contends, she would have considered that Defendant had two sisters living in Tennessee who are United States citizens. ECF No. 40 at 14. Perhaps, but Defendant cannot explain how his ties to his sisters, in light of his negative equities, show that it is plausible that the IJ would have allowed him to voluntarily depart.

Defendant cites several cases that he contends are "examples of cases where noncitizens with similar equities were found to be candidates for voluntary departure." ECF No. 52 at 6. The Court disagrees that Defendant's equities are similar to these noncitizen examples. In each case, the noncitizen had a substantially

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 9

longer durational history or significantly stronger family ties. Defendant has neither a long residential history in the United States nor significant family ties.

Here, relief was merely conceivable, not plausible. Accordingly, the Court finds that Defendant has failed to meet his burden to show prejudice and denies relief on this basis.

**C.  The IJ did not violate Defendant's due process rights by failing to explain that he could withdraw his application for admission**

Defendant next asserts that the IJ was constitutionally obligated to advise him that he could withdraw his application for admission to the United States.[1] ECF No. 40 at 12. This contention has no merit.

In a removal proceeding, an IJ need only advise a noncitizen of relief when the "record *contains an inference that the petitioner is eligible for [it]*." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (internal quotation marks omitted). Defendant cites *United States v. Cervantes-Gonzales,* 238 F. App'x 278, (9th Cir. 2007), for the proposition that IJs must inform noncitizen respondents of every form of relief available, no matter their odds of receiving it. ECF No. 52 at 4–5. In *Cervantes-Gonzales*, an unpublished opinion, the Ninth Circuit held that "[d]ue process requires IJs to inform individuals in removal proceedings of their

---

[1] Defendant also argues that he suffered resulting prejudice. ECF No. 40 at 14. Because the Court finds Defendant was not denied due process, it need not reach this issue.

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 10

eligibility for any form of relief." 238 F. App'x at 279. But, in so holding, the Ninth Circuit cited its previous opinion in *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004), which held that that IJs need only inform noncitizens of relief when the record creates an inference the noncitizen is eligible for it. *Cervantes-Gonzales*, 238 F. App'x at 279.

The Court declines to adopt Defendant's reading of *Cervantes-Gonzales*. The Court finds it unlikely that the Ninth Circuit intended to effectively overturn its longstanding instruction in an unpublished, three-page opinion. Plus, it makes little sense to require an IJ to catalogue every form of immigration relief available no matter how facially ineligible the respondent is for it or how futile application for such relief would be.

Here, Defendant was patently ineligible to withdraw his application for admission and therefore the IJ was under no obligation to inform him of this relief. "An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). The regulations implementing this statute limit relief to a certain class of noncitizens. Specifically, [a]n immigration judge may allow **only** an arriving alien to withdraw an application for admission. 8 C.F.R. § 1240.1(d) (emphasis added). An "arriving alien" is:

> an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 11

> United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1.2.

Defendant manifestly does not meet this definition. The record does not support any inference that Defendant came or attempted to come into the United States at a port-of-entry or was interdicted in international or United States waters. Rather, Defendant admittedly entered the United States unlawfully and was apprehended by immigration authorities in a local jail. Indeed, on the United States Department of Homeland Security's standard Notice to Appear form, there are three checkboxes to designate a noncitizen's status: (1) "You are an arriving alien;" (2) "You are an alien present in the United States who has not been admitted or paroled;" and (3) "You have been admitted to the United States, but are removable for the reasons stated below." ECF No. 40-4 at 1. Only the second box was checked on Defendant's NTA. *Id.*

The record before the IJ did not support even the slightest inference that Defendant was eligible to withdraw his application. Because Defendant was not an arriving alien, he was facially ineligible to withdraw his application and any application would have been futile. As the Due Process Clause does not require that an IJ advise noncitizen respondents of relief they are categorically ineligible for, the

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 12

IJ did not violate Defendant's due process rights when she declined to advise Defendant that he could withdraw his application for admission.

**D.    Defendant is exempted from the exhaustion requirement**

The Government argues that Defendant cannot collaterally attack his February 2013 removal order because he waived his appeal rights and therefore did not exhaust the administrative remedies available to him. ECF No. 50 at 19. The Court disagrees.

A noncitizen may not challenge the validity of a prior removal order unless he "exhausted any administrative remedies that may have been available to seek relief against the order." 8 U.S.C.A. § 1326. Available relief includes a direct appeal of the removal order. *United States v. Garza-Sanchez*, 217 F.3d 806, 808 (9th Cir. 2000). While a noncitizen cannot collaterally attack a prior removal order if he waived the right to appeal that order, the waiver must have been "considered and intelligent." *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

A waiver is not "considered and intelligent" if the removal proceeding did not comport with due process. *United States v. Muro-Inclan*, 249 F.3d 1180, 1183 (9th Cir. 2001); *Ubaldo-Figueroa*, 364 F.3d at 1049–50. As discussed above, Defendant was denied due process when the IJ summarily denied voluntary departure without allowing Defendant a meaningful opportunity to present his case. Because Defendant's 2013 removal proceeding did not comport with due process,

ORDER DENYING DEFENDANT'S SECOND MOTION TO DISMISS – 13

he is exempted from the exhaustion requirement. *See Ubaldo-Figueroa*, 364 F.3d at 1049–50.

Accordingly, **IT IS HEREBY ORDERED**:

Defendant's Second Motion to Dismiss, **ECF No. 40**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshals Service.

**DATED** this 4th day of November 2021.

_____
SALVADOR MENDOZA, JR.
United States District Judge